Whenever you're ready. May it please the court, Kenneth Carpenter appearing on behalf of Mr. John Koopmans. Mr. Koopmans' appeal believes that the Veterans Court relied upon a misinterpretation of the statutory provision for the presumption of soundness at 38 U.S.C. section 1111. The board correctly determined, and this is the pivotal finding in this case, that an April 1953 pre-induction examination showed no complaints or treatment for any ulcer or duodenal disease. In the red brief at 5 and 6, the government says VA examiners found, and then they quote, the condition clearly and unmistakably pre-existed Mr. Koopmans' military service, even after resolving any reasonable doubt in Mr. Koopmans' favor. Why didn't you discuss that in your blueprint? I didn't discuss it because I don't believe it's relevant to the question that was presented by the decision made by the Veterans Court. The decision made by the Veterans Court was that the fact that the rating board did not specifically reference the presumption of soundness or aggravation, or did not specifically recite the applicable standard of proof, the holdings of board decision that constituted as a matter of law relying upon this court's decision and Naftali. Naftali deals with the question of whether or not the presentation of a Q claim on the basis of failure to discuss those presumptions constitutes clear and unmistakable error. That is not what happened here. What happened here was that the veteran made a specific request for revision on the VA's failure in both the 54 and 55 decisions for failure to correctly apply the presumption, to apply it at all. The presumption was not applied in this case because the end result was that the board, when it examined the 54 and 55 decisions, did not discuss whether or not the board, the VA, in those decisions met its statutory burden to rebut the presumption by clear and unmistakable error. Clear and unmistakable evidence of both pre-existence and aggravation. The reference that you make to the red brief is simply a reference to the fact that there was a declaration of that fact and a declaration that it constituted clear and unmistakable evidence. But that's not the legal standard to simply say that it happened. What is required under the presumption of soundness is to be able to identify in the record where there exists clear and unmistakable evidence. The evidence, but Naftali tells us that the VA wasn't required to specifically advert to the presumption of soundness. No, and it wasn't necessary in this case because it was clear that they made a determination inferentially based upon the presumption of soundness. But they, in fact, did not correctly apply it because, as I was initially referencing, at Appendix 114, there is a medical examination at entrance to service that triggered the presumption of soundness. Once the presumption of soundness is triggered, the evidentiary burden shifts from the veteran to the secretary. And the secretary must come forward with clear and unmistakable evidence to rebut both prongs of the presumption of soundness. Not to merely declare that it has occurred, which is all that happened in the 54 decision that was confirmed and continued by the 55 decision. That is an error of law by the Board of Veterans Appeals. And what was reviewed by the Veterans Court in this case was not whether there was or wasn't a clear and unmistakable error in either of those two rating decisions, but was the review proper by the board. And the review was not proper by the board because the board did not consider or did not identify where in the record there was clear and unmistakable evidence to rebut both prongs of the presumption of soundness. Let me ask you if I could. I realize you were not counsel representing the veteran before the Veterans Court, but at the bottom of Appendix 2, it says the appellant's sole argument, this is the Veterans Court speaking, is that the decision must contain cue as a matter of law as the decision did not discuss the presumption of soundness and aggravation or whether the evidence of record rebutted those presumptions. That seems to be a statement by the Veterans Court saying that the appellant is arguing that there was a deficiency or simply because of what was not raised or discussed. And that parrots the language of Naftali, but that is not a fair characterization of what was presented by Mr. Koopman. No, we don't have Mr. Koopman's, as I understand it, and correct me if I'm wrong, we don't have Mr. Koopman's briefing before the Veterans Court. No, you do not. So we just have to take that. Well. You're saying that's not an accurate statement of what he contended before the Veterans Court. I am saying that exactly. Are you saying he erred below or it doesn't accurately reflect it? Well, I'm actually saying both. I'm saying first that he mischaracterized the way in which the argument was presented to the Veterans Court and that what was presented to the Veterans Court was as a matter of law when you do not rebut the presumption of soundness, the presumption of soundness stands. And if the presumption of soundness stands, then Mr. Koopman was entitled to the benefit of the presumption that his duodenal ulcer was incurred while on active duty. Once the presumption was triggered, the evidentiary burden shifted. The evidentiary burden shifting then requires an examination by the board to determine whether in 54 and 55, the VA correctly applied or concluded that the presumption of soundness was rebutted. In the Gray Brief, at 5, you say, pardon me, while it is true, there was some evidence which suggested Mr. Koopman's preservative. There was no clear and unmistakable evidence. Are you trying to get us to reweigh the evidence? Oh, no. No, no, Your Honor. What I'm asking this court to do is to examine the opinion, excuse me, the board decision below to determine whether there is any possible way that the Veterans Court could have affirmed that decision under a correct interpretation of 1111. And 1111 requires that there be clear and unmistakable evidence to rebut both prompts. You cannot trigger the presumption, have the presumption afforded to the Veteran, and then simply declare in your decision that there was a preexisting condition and that the condition was not aggravated. That's all that appears in literally both decisions. That is not a correct application. The correct application in this case by the board, not by the two rating decisions, must have examined the record to identify where in the record there existed clear and unmistakable evidence to rebut prong one. If prong one is not rebutted, then the presumption stands. If prong one is rebutted, then you move to prong two, and the evidentiary burden is still the same, and there must be clear and unmistakable evidence to rebut the second prong. And that is the analysis that is missing from the… Hang on, Mr. Carpenter. Excuse me, time is fleeting, so I need to ask you this question. Sure, sure. At Appendix 116, the board states, the board finds that the RO could reasonably have found that the evidence of record clearly and unmistakably indicated, etc. Yes. Now you're, as I understand it, mainly from your reply brief, but also in your blue brief, your complaint here is that the whole problem here is the use of the word reasonably. Yes. That that implies that the board was using an incorrect standard. Correct. But, I mean, isn't that really just almost hanging too much on this one word when there was this evidence to which the board pointed? Isn't the board just basically saying, this was proper, this is something that supports the RO's decision? Would you argue if the board dropped the word reasonably? Would your argument be gone? No, I don't believe so, but I want to make sure that you understand that what's being appealed here is not that determination by the board, but what is being appealed here is the veterans court determination that the government… But the veterans court endorsed in its decision, the veterans court endorsed what the board said. Yes. But at some point, I know the veterans court alluded to this in support of its decision, so that's why I was pointing to it. But the veterans court made its determination on the fact that the RO decisions before 1989, under this court's decision in Naftali, were not required to discuss. And that was the error made below. This appeal is not about whether or not there was or wasn't clear and unmistakable evidence in the record. I understand, though, Mr. Connery. Your argument is that the whole problem, I mean, correct me if I'm wrong, but the whole problem here is that an incorrect standard is reflected through use of this word reasonably. Because that is not the correct legal standard. The correct legal standard… Clear and unmistakable. And that is an evidentiary burden under this court's decision in Wagner that, once the presumption is triggered, is shifted to the government. Are you saying that the use of the word reasonably in the context in which we see it in the board decision and the CAVC decision reflects a misunderstanding on the part of those two tribunals of the clear and unmistakable standard? Yes. And that the clear and unmistakable standard is triggered once the examination failed to note an incurrence, or excuse me, a preexisting condition at entrance of service. I see I'm into my rebuttal time, and I would like to retain the balance unless there's further questions before I sit down. All right. Thank you very much, Your Honor. Thank you. May it please the Court. I think we have to focus on the fact this is a Q claim, not a live appeal. And it sounds like Mr. Koopmans is trying to make an argument that would be appropriate, possibly, if you were reviewing a board decision in a Veterans Court decision in a live appeal. But we are operating here under the Q framework. So that what the board does when it describes that it was reasonable that the RO found clear and unmistakable error to rebut the presumption of soundness, that's exactly what the board's supposed to do when undergoing a Q analysis. So what I'll do here is to address some of the questions that the Court raised. Judge Schall, you implied with some of your questions there could be an Andre concern here with respect to whether or not the Q claim that's being presented to this Court was the same one that was at least presented to the Veterans Court and maybe below. We looked into that. Although it does seem like the Veterans Court labeled the challenge as being a Natale challenge of just not referencing the presumption of soundness, which the Veterans Court disposed of by pointing out that the Appendix 41 decision in 1954 clearly is addressing the presumption of soundness. There's no other reason that the statements at the second and third statements at the discussion portion of that decision are even present without there being a presumption of soundness being taken into account. The third sentence clearly addresses the presumption of aggravation, noting the medical evidence that showed that the ulcer had completely resolved after the dietary treatment. So there's no question that the 1954 and 55 RO decisions addressed the presumption of soundness and the presumption of aggravation. The evidence in the record is overwhelming that the presumption of soundness is overcome by clear and unmistakable evidence. All you have at the time of the 1954 and 55 decisions are the medical opinion from the Army doctor who recommended the honorable medical discharge. And then you have at Appendix 40 the finding of an RO doctor who is looking at the films that were taken during Mr. Koopman's hospitalization and identifying for purposes of the aggravation prong that the ulcer had completely resolved. And then you have to understand that at this time, prior to 1990, it wasn't unusual for medical doctors to actually take part in rating decisions, even at the RO level. And that happened in this case. If the court looks at Appendix 41 and 50, I believe, which is the 55 medical RO decision, both rating boards comprised medical doctors who are at that time expected to use their medical expertise in reviewing the record. And in both decisions, they found that, well, the second decision focuses more on whether there was any new evidence submitted. But the first clearly finds that based on sound medical principles, this condition preexisted service. So you cannot say there's any medical – at Reply 5, as Judge Wallach noted, the concession that some evidence exists – well, all the evidence exists in favor of a clear and unmistakable – overcoming the presumption. It's including that there was no permanent aggravation of the injury as a result of medical service. So there's no evidence here, frankly, that is on the other ledger. The only evidence identified to the RO at the time really was the medical – You misspoke, I believe, Mr. Hawking. You meant military service. Military service. I'm sorry. Medical – well, he was being treated during his military service. The only evidence on the other side of the ledger are the two notes from his treating physician, neither of which address the medical question. They simply say, I was not aware of any of the symptomatology before service. That doesn't answer the question in it. So it's not even really negative evidence in the balancing process. And as far as the lay statements that were submitted, I think that the board properly identified that lay statements made while one is seeking medical treatment generally are more probative than when one is seeking monetary benefits. And there's nothing here for this court to address as far as what was conducted in the 1954 and 55 rating decisions. Mr. Hawking, what – so you're saying we don't have a situation where a different argument was presented to the Veterans Court than what is being presented now? My answer to that, Your Honor, is I believe that the Veterans Court characterized the argument as sort of a straight-out Natale argument at Appendix 2. I know that in the record there is the actual motion for Q that was filed that started this whole process. And for purposes of – my main focus when I'm looking at – when we're looking at this question is, is that basically what's being argued now? That is. The argument was a little bit more about the application of the standard than it was whether or not the standard was used. So I have no reason to question Mr. Carpenter's recollection that the argument was a little bit more nuanced for the Veterans Court. So I think – So the other question I have is, do you understand the main argument that's being made here on appeal? The error was in using this word reasonably and that this apparently was what threw the train off the track, so to speak. My opening line here on my notes is this appeal is all about a sentence in the reviewing board decision that Mr. Coopman suggests is error, focusing on the word reasonable. And our response is that that's entirely appropriate when a board who is in the Q review mode is looking back in the past. And so what that board is supposed to do is to determine whether there's any outcome determinative error upon which reasonable minds could not differ. Now whether or not the board at the time sort of got caught up with the reasonable minds could not differ and so thought it would be an appropriate way to characterize what the evidence was before the 1954 board, I don't know. But I do know that they are not required to redo like a live appeal, the analysis and conduct some sort of de novo review and spell it all out. Otherwise, it's not Q. Because although Mr. Coopman is correct that in the normal presumption of soundness analysis, once it's established that the person was of sound condition upon entrance, the burden shifts in a live appeal. So in the Q analysis, the first question is, is there outcome determinative error? Is it clear and unmistakable error upon which reasonable minds could not differ? That puts the burden on the claimant. And in addressing that, if there was no evidence at all, clearly in this case, supporting the findings of the 1954 board, one might presume that maybe the board goofed up here. We know there's evidence. There's only evidence in support of the 1954 decision. Mr. Coopman recognizes that. The question I asked Mr. Carpenter is pretty much what you're saying, which is whether we strike the word reasonably or leave it in really doesn't make a difference. No. I mean, the fact that when you understand that there's clearly evidence, in this case there's only evidence on one side of the ledger, but even hypothetically, if there was evidence on both sides of the ledger in a Q analysis, the VA has by regulation identified that weighing of the evidence cannot be Q for all kinds of reasons. The legislative history behind the Q does point to the 1A situation. An example, if you probably are aware of the absence, well, the argument was that the spouse was seeking benefits and couldn't establish that she was actually married when, in fact, the record contained a marriage certificate. Well, that's a factual error, and clearly that's a clear error that would have affected the outcome. We don't have that here. Thank you, Mr. Hart. Mr. Carpenter, you've got a little bit more than three minutes. Please, Court. The government, both in its briefing and in its argument, attempts to focus this court on the question of clear and unmistakable error. That is not the issue in this appeal. The issue in this appeal is the fact that the Veterans Court relied improperly on this court's decision in Naftali. The result of that reliance is that Mr. Koopsman was denied judicial review of his appeal of the board's decision. The reliance upon Naftali shortcuts the Q analysis by saying that you get a get-out-of-jail-free card government because prior to 1989 there was no requirement to discuss with specificity the presumption of soundness. That then precluded any analysis by the Veterans Court of whether or not the board did or did not correctly review the 54 and 55 decisions. This is not a Naftali situation. How can you say it's not a Q analysis? Because the Q analysis is about whether or not there was or was not clear and unmistakable error in the 54 and 55 decisions. That is a question to be resolved first by the agency and upon de novo review by the board. That is their responsibility. The Veterans Court shortcutted Mr. Koopsman's judicial review of that decision by saying that this was a Naftali situation. This is not a Naftali situation because as Mr. Hockey correctly points out at appendix 41. Everything the Veterans Court said though amounts to a Q determination. But that's not the issue before the Veterans Court. The Veterans Court has said in its Archer holding that it does not make a plenary review of Q. So if they're not reviewing the 54 and 55 decision, they're only reviewing what the board did. And the question is, did or did not the Veterans Court short circuit Mr. Koopsman's opportunity to challenge what the board did in this case? And by relying upon Naftali, that's precisely what happened here. Before you step down, I just want to make completely sure I understand your argument, Mr. Farmer. You're saying that the Veterans Court improperly relied on Naftali. And that in turn, that reliance improper, prevented it from really looking at the key question whether there was clear and unmistakable evidence here. Correct. Not clear and unmistakable error, but clear and unmistakable evidence. Clear and unmistakable evidence. And this reasonable point sort of is support for the fact that they didn't look at it in that proper lens. That's correct. If you will, that is merely tangential or demonstrative of the lack of judicial review. Thank you very much, Your Honor. Thank you, Mr. Farmer. The matter will stand submitted.